UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY RANDALL,

                Petitioner,

                                        CASE NO. 10-13525
        v.                              HONORABLE GEORGE CARAM STEEH

CATHERINE BAUMAN,

                Respondent.
_____/

**OPINION AND ORDER DENYING THE WRIT OF HABEAS CORPUS,
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT
GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Anthony Randall has filed a pro se habeas corpus petition challenging

his state convictions for armed robbery and possession of a firearm during the

commission of a felony (felony firearm).  Petitioner alleges that:  the trial court abused

its discretion by interjecting special knowledge into the case; the prosecutor suppressed

potentially exculpatory evidence; the evidence at trial was insufficient; and his trial and

appellate attorneys were ineffective.  Respondent urges the Court through counsel to

dismiss the petition for lack of merit or because petitioner's claims are procedurally

defaulted.  Having reviewed the pleadings and record, the Court agrees that petitioner is

not entitled to habeas corpus relief.  Accordingly, the petition will be denied.

**I.  BACKGROUND**

**A.  The Charges, Trial, and Sentence**

Petitioner was charged in Wayne County, Michigan with two counts of armed

robbery, two counts of assault with intent to commit murder, and one count of felony

-1-

firearm.  The charges arose from allegations that petitioner, while armed with a gun,
took $20.00 and a wallet from a man and a woman at a gas station in Detroit on July 7,
2005.  Petitioner was tried without a jury in Wayne County Circuit Court where the
following witnesses testified.

<u>Peter Halatsis' Testimony</u>

Peter Halatsis testified that, about 2:30 p.m. on July 7, 2005, he and his wife
drove to a gas station at Alter Road and East Warren Avenue in Detroit.  Upon their
arrival, he handed a $20.00 bill to his wife, Caryl Hobert, and told her to purchase
$10.00 worth of gas.  As he was handing the money to Ms. Hobert, he noticed petitioner
get out of a white Chevy van on the other side of the gas pump.  Petitioner pulled out a
gun and racked it.  A bullet popped out of the gun and landed in Halatsis' car near his
leg.  Petitioner picked up the bullet and put it in his pocket.  Petitioner then placed the
gun by Halatsis' ear.  He grabbed Halatsis' wallet and said, "Give me that wallet or I'll kill
you."  Ms. Hobert was getting out of the car at the time, but petitioner pointed the gun at
her and said, "Hey, get back in here.  I'll kill you, too."  After Ms. Hobert got back in the
car, petitioner snatched the $20.00 bill out of her hand and instructed the couple to
leave.  As Halatsis pulled out of the driveway, he saw petitioner get back into his white
van, which had two big red doors and a spare tire on the back of it.  Halatsis made a U-
turn and followed petitioner.  At the same time, he was talking to the 911 operator.  He
lost sight of petitioner two times, but eventually approached a police car and provided
the police with a description of the suspect and the suspect's van.  He and Ms. Hobert
went to a friend's business nearby, but within fifteen minutes, the police came and
asked him to view someone that the police had stopped.  Halatsis followed the police to

a gas station two blocks away from where he had been robbed.  Once there, he identified petitioner.

Halatsis denied going to the gas station to meet someone or to buy drugs.  He claimed that he did not know petitioner, did not buy drugs from him, had never seen him before, and did not have a dispute with him over drug money.

### Caryl Hobert's Testimony

Caryl Hobert corroborated Mr. Halatsis' testimony and identified petitioner in court as the man who robbed her and Halatsis.  When asked whether Halatsis had gone to the gas station to obtain crack cocaine, she said that would be impossible because they did not smoke crack cocaine.

### Frank Senter's Testimony

Detroit Police Officer Frank Senter testified that he responded to a call about an armed robbery on July 7, 2005.  He observed petitioner exit a white van with two red doors at Alter Road and Mack Avenue.  He and his partner took petitioner into custody and searched him.  Petitioner had $292 in currency and a shell casing in his right front pocket.

### The Motion for a Directed Verdict of Acquittal

The prosecution rested after Officer Senter's testimony.  Defense counsel then moved for a directed verdict of acquittal on the two assault charges.  The trial court granted the motion and dismissed the two counts of assault with intent to commit murder.  The trial proceeded on the remaining counts of armed robbery and felony firearm.

-3-

<u>Antwane Randall's Testimony</u>

Antwane Randall testified for the defense that petitioner was his younger brother and that, on July 7, 2005, petitioner called him on the telephone. Following the phone call, they went to the Mobile gas station at Alter Road and Warren Avenue in a white van, which petitioner drove. Their cousin Bennie Randall was with them. At the gas station, his brother got out of the car, walked over to two people, grabbed their money, and said, "This the money y'all owe me." Petitioner then got back in the van and took Antwane to his cousin's house. He (Antwane) did not have any further contact with petitioner that day, and he denied seeing a gun in the van or on petitioner.

On cross-examination, Antwane stated that petitioner did not snatch the money from the complainants. Instead, according to Antwane, the complainants put the money in petitioner's hand for a reason.

<u>Anthony Randall's Testimony</u>

Petitioner Anthony Randall testified that he sold crack cocaine and that Mr. Halatsis was a customer whom he knew as "Pete." He had previously advanced Halatsis $100.00 of credit for crack cocaine. On July 7, 2005, Halatsis called him on the phone to tell him that he had the money to pay him. Halatsis asked petitioner where they could meet.

Petitioner went on to say that he, his brother, and his cousin met Halatsis at a gas station where Halatsis handed him the $100.00, which he owed petitioner. Although Halatsis requested an additional $100.00 worth of credit, he denied Halatsis' request and drove off. He dropped off his brother and cousin and proceeded to meet

-4-

another customer.  The police stopped him, searched him, and found an imitation bullet on a key chain in his right pocket.  The police then arrested him.

Petitioner denied having a weapon on him that day, and when asked on cross-examination about his statement to the police, he denied telling the police that he had snatched the money from the complainants.  He maintained that the complainants handed him the money.  Petitioner admitted that he had signed his statement to the police, but he denied reading the statement before signing it.

### Markus Perttunen's Testimony

Police Officer Markus Perttunen testified on rebuttal that he interviewed petitioner on July 7, 2005.  He read petitioner's constitutional rights to him,[1] and, at the conclusion of the statement, he gave petitioner an opportunity to read his statement.  Petitioner did not inform him that the answers on the paper were improper or not his answers.

During the interview, petitioner informed Officer Perttunen that the complainants bought drugs from him, and because they owed him money, he took the money from them.  Petitioner denied robbing the complainants, and he denied having a gun that day.  He stated that he "just snatched" the money from the complainants when they refused to pay him.  He claimed that he had sold drugs to the complainants about five times in the past, that they used heroin and crack cocaine, and that they owed him $95.00.  He did not know their names.

At the conclusion of the trial on October 25, 2005, the trial court found petitioner guilty of two counts of armed robbery, Mich. Comp. Laws § 750.529, and one count of

_____

[1] Defense counsel stipulated that petitioner's statement to Officer Perttunen was knowing and voluntary.

felony firearm, Mich. Comp. Laws § 750.227b.  The trial court sentenced petitioner to

two years in prison for the felony firearm conviction, followed by concurrent terms of

twelve to twenty-five years in prison for each armed robbery conviction.

**B. The Direct Appeal and Post-Conviction Proceedings**

On appeal from his conviction, Petitioner argued through counsel that the

evidence presented at trial was insufficient to support his conviction for armed robbery.

The Michigan Court of Appeals disagreed and affirmed petitioner's convictions in an

unpublished, per curiam opinion.  See People v. Randall, No. 267689 (Mich. Ct. App.

Mar. 1, 2007).  On June 26, 2007, the Michigan Supreme Court denied leave to appeal

because it was not persuaded to review the issue.  See People v. Randall, 478 Mich.

931; 732 N.W.2d 916 (2007).

On February 14, 2008, petitioner filed a motion for relief from judgment in the trial

court.  He alleged that (1) the trial court abused its discretion by interjecting special

knowledge of how drug dealers operate, (2) the prosecutor suppressed evidence, (3)

defense counsel was ineffective for failing to challenge the prosecution's suppression of

evidence, (4) trial counsel was ineffective for failing to investigate and identify an

obvious Brady v. Maryland issue, and (5) appellate counsel was ineffective for failing to

raise issues one through four on direct appeal.  The trial court denied the motion after

concluding that Petitioner had not shown "good cause" under Michigan Court Rule

6.500(D)(3) for not raising his claims on appeal and "actual prejudice."[2]

---

[2]   Pursuant to Rule 6.508(D)(3), a state court may not grant a motion for relief
from judgment if the motion

    (3) alleges grounds for relief, other than jurisdictional defects, which could
    have been raised on appeal from the conviction and sentence . . . unless

Petitioner appealed the trial court's decision without success. The Michigan Court of Appeals denied his application for leave to appeal on the basis that petitioner failed to establish entitlement to relief under Michigan Court Rule 6.508(D). See People v. Randall, No. 292447 (Mich. Ct. App. Oct. 28, 2009). On May 25, 2010, the Michigan Supreme Court denied leave to appeal for the same reason. See People v. Randall, 486 Mich. 928; 781 N.W.2d 815 (2010).

## C. The Habeas Petition and Responsive Pleading

On September 3, 2010, petitioner filed his habeas corpus petition pursuant to 28 U.S.C. § 2254. He claims that: (1) the trial court abused its discretion by interjecting special knowledge of how drug dealers operate; (2) defense counsel was ineffective for failing to challenge the suppression of a shell casing and for failing to object to the prosecutor's mischaracterization of the casing as a bullet; (3) the prosecutor's suppression of the shell casing deprived him of a fair trial; (4) defense counsel was ineffective for failing to (a) investigate and request production of the casing and (b) subpoena the complainant's phone records; (5) the evidence at trial was insufficient to sustain the armed robbery convictions; and (6) appellate counsel was ineffective for failing to raise obvious issues on direct appeal.

Respondent argues in her answer to the petition that petitioner's fifth claim regarding the sufficiency of the evidence lacks merit because the state reasonably

---

the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal . . . , and

(b) actual prejudice from the alleged irregularities that support the claim for relief.

applied federal law when it concluded that sufficient evidence existed to support
petitioner's convictions.   Respondent argues that habeas claims one through four are
procedurally defaulted because petitioner either failed to raise those claims on direct
appeal, as required by Michigan Court Rule 6.508(D)(3), or because he did not exhaust
state remedies for all his claims and he no longer has an available remedy to exhaust.
Respondent treats the sixth habeas claim (ineffective assistance of appellate counsel)
as a "cause and prejudice" argument to excuse petitioner's procedural defaults.
Petitioner replies that his claims should not be deemed defaulted because his appellate
attorney was ineffective for failing to raise the issues on direct appeal.

A procedural default is "a critical failure to comply with state procedural law."
Trest v. Cain, 522 U.S. 87, 89 (1997).  A prisoner may obtain relief on a
procedurally-defaulted claim if he or she "demonstrate[s] cause for the default and
actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that
failure to consider the claims will result in a fundamental miscarriage of justice."
Coleman v. Thompson, 501 U.S. 722, 750 (1991).  The petitioner "must also show that
the claims are meritorious."  Babick v. Berghuis, 620 F.3d 571, 576 (6th Cir. 2010), cert.
denied, __ U.S. __, 131 S. Ct. 2121 (2011).  The Court chooses to "cut to the merits
here, since the cause-and-prejudice analysis adds nothing but complexity to the case."
Id.

## II.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for
persons in state custody is provided by 28 U.S.C. § 2254, as amended by the
Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  Harrington v. Richter,

-8-

__ U.S. __, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, state prisoners are not

entitled to the writ of habeas corpus unless the state court's adjudication of their claims

on the merits

> (1)    resulted in a decision that was contrary to, or involved an
>         unreasonable application of, clearly established Federal law,
>         as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable
>         determination of the facts in light of the evidence presented
>         in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court
> may grant the writ if the state court arrives at a conclusion opposite to that
> reached by [the Supreme] Court on a question of law or if the state court
> decides a case differently than [the Supreme] Court has on a set of
> materially indistinguishable facts.  Under the "unreasonable application"
> clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the
> state court identifies the correct governing legal principle from [the
> Supreme] Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for

Part II).

"A state court's determination that a claim lacks merit precludes federal habeas

relief so long as 'fairminded jurists could disagree' on the correctness of the state

court's decision."  Richter, 131 S. Ct. at 786 (quoting Yarborough v. Alvarado, 541 U.S.

652, 664 (2004)).  "[E]ven a strong case for relief does not mean the state court's

contrary conclusion was unreasonable."  Id. (citing Lockyer v. Andrade, 538 U.S. 63, 75

(2003)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must

show that the state court's ruling on his or her claim "was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

### III.  DISCUSSION

**A.  Sufficiency of the Evidence**

The Court begins its discussion with petitioner's claim that the evidence adduced at trial did not support his armed robbery convictions.  Petitioner argues that (1) there was no evidence of an aggravated or serious injury and (2) he had a claim of right to the money taken from the victims.  The Michigan Court of Appeals found no merit in these allegations.

The relevant question on habeas corpus review of a sufficiency-of-the-evidence claim is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 319 (1979) (citing Johnson v. Louisiana, 406 U.S. 356, 362 (1972)) (emphasis in original).  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  Id. at 324 n.16.  In Michigan, the elements of armed robbery are:

> that (1) the defendant, in the course of committing a larceny of any money or other property that may be the subject of a larceny, used force or violence against any person who was present or assaulted or put the person in fear, and (2) the defendant, in the course of committing the larceny, either possessed a dangerous weapon, possessed an article used or fashioned in a manner to lead any person present to reasonably believe that the article was a dangerous weapon, or represented orally or otherwise that he or she was in possession of a dangerous weapon.

-10-

People v. Chambers, 277 Mich. App. 1, 7; 742 N.W.2d 610, 614 (2007) (footnote omitted).

There was evidence at petitioner's trial that petitioner was armed with a gun on July 7, 2005, that he frightened the complainants by threatening to kill them, and that he took money and a wallet from them.  This evidence was sufficient to sustain petitioner's convictions for armed robbery.

**1.  Claim of Right**

Petitioner nevertheless argues that he lacked the felonious intent needed to be found guilty of armed robbery because he had a claim of right to the money taken from the victims.  In Michigan, larceny is an integral part of any armed robbery, and if the specific intent to steal is lacking, there can be no armed robbery.  People v. Karasek, 63 Mich. App. 706, 710-11; 234 N.W.2d 761, 764 (1975).  Consequently, if a party takes money or property in a good faith belief that he is entitled to the money or property, there is no felonious intent and the person is not guilty of committing a larceny.  Id., 63 Mich. App. at 711-12; 234 N.W.2d at 764.  But, if the defendant admits that he collected money from illegal activities and knew that the alleged debt was the product of illegal activities, such knowledge negates the existence of good faith on the defendant's part. Id., 63 Mich. App. at 713; 234 N.W.2d at 765.

Petitioner admitted at trial that he was selling crack cocaine and that he knew it was against the law.  He also claimed that Peter Halatsis was his customer and that the money which he took from Halatsis was payment for a drug debt.  (Trial Tr. 70-72, Oct. 25, 2005.)  Because petitioner's claim of right to the complainants' money allegedly

-11-

arose from an illegal drug transaction, he did not have a good faith right to the money, and his claim-of-right argument lacks merit.

### 2. Aggravated Assault or Serious Injury

Petitioner's only other challenge to the sufficiency of the evidence is that neither complainant was seriously injured during the incident.  A serious or aggravated injury, however, is not an element of armed robbery.  It is merely a factor to be considered at sentencing.  See Mich. Comp. Laws § 750.529 (stating that, "[i]f an aggravated assault or serious injury is inflicted by any person while violating this section, the person shall be sentenced to a minimum term of imprisonment of not less than 2 years").  As the Michigan Court of Appeals correctly pointed out, petitioner confuses an aggravating sentencing factor for an element of the crime.  His argument, therefore, lacks merit.

### 3. Summary

A rational trier of fact could have concluded from the evidence, taken in the light most favorable to the prosecution, that petitioner was armed with a gun on July 7, 2005, that he robbed the complainants of money and a wallet, and that he possessed a felonious intent.  Therefore, the evidence was sufficient to support petitioner's robbery convictions, and the state appellate court's decision was not contrary to, or an unreasonable application of, Jackson.

**B.  The Trial Court's Comment on Drug Dealers**

Petitioner alleges that the trial court abused its discretion at trial by interjecting a comment about how drug dealers operate.  The contested remarks read:

> Now as the fact finder I'm to draw reasonable inferences and conclusions from the facts and the testimony in this trial, in this case.  Certainly one of the reasonable inferences I can draw is the notion of is it common practice or is it common knowledge that street level crack dealers advance drugs to people, and the answer to that I believe is no.

> It simply does not happen, or if it does happen, it's advanced to people who they know.  They know how to get ahold of them.  They know where they live and everything like that.

> In this particular case someone well, I've seen him.  I know him as Pete.  I sold him drugs maybe five times, but I advanced him $100.00 worth of drugs.  That doesn't happen in real life.  No.

(Trial Tr. 88, Oct. 25, 2005.)

Petitioner asserts that there were no facts in evidence to support the trial court's findings that street-level crack dealers do not advance drugs to people and that drug dealers who do advance credit know how to reach their customers.  Petitioner contends that it was reversible error for the trial court to rely on its own specialized knowledge and experience to assess his guilt and the credibility of witnesses.  He claims that the court exceeded the permissible scope of inferring facts from the evidence and relied instead on non-record evidence, which he had no opportunity to contest.

Petitioner raised this claim in his motion for relief from judgment.  The trial court rejected the claim on the basis that it had made a reasonable common sense evaluation of the different versions of the incident and found petitioner's version unreasonable and unworthy of belief.

-13-

The <u>Jackson</u> standard for determining whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt, "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basis facts to ultimate facts." <u>Jackson</u>, 443 U.S. at 319.  And even though a trial judge may not deliberately gather facts from outside the record at a bench trial, nor interject his personal evidentiary observations, a trial judge "is permitted to bring his experience and knowledge to bear in assessing the evidence submitted at trial."  <u>Hersch v. United States</u>, 719 F.2d 873, 878 (6th Cir. 1983).

<u>Hersch</u> was a federal tort claim case involving the crash of a private airplane. Although the plaintiffs argued that the trial judge's findings were tainted by his reliance, in part, on his background in the military and his experience as a sailor, the Sixth Circuit disagreed and stated that "[t]he trial judge did not overstep the bounds of propriety."  <u>Id</u>.

The trial judge in petitioner's case was permitted to rely on his experience as a judge when assessing the evidence.  He reasonably inferred that a street-level crack dealer, such as petitioner claimed to be, would not advance $100 in drugs to someone known only as "Pete."  As in <u>Hersch</u>, the trial judge did not overstep the bounds of propriety.  Petitioner therefore has no right to relief on the basis that the trial court abused its discretion when rendering a decision in his case.

## C.  The Prosecutor

Petitioner alleges next that the prosecutor deprived him of due process and a fair trial by suppressing a shell casing, which police officer Frank Senter found in petitioner's pocket at his arrest.  Petitioner brings his due process claim under <u>Brady v. Maryland</u>,

-14-

373 U.S. 83 (1963). The state trial court adjudicated this claim and concluded that petitioner's reliance on <u>Brady</u> was misplaced because no physical evidence was hidden or kept from the defense. This Court agrees for the following reasons.

### 1. Clearly Established Federal Law

"Under <u>Brady</u>, the State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." <u>Smith v. Cain</u>, __ U.S. __, __, 132 S. Ct. 627, 630 (2012). Petitioner bears the burden of showing that the prosecution suppressed evidence. <u>Bell v. Howes</u>, 703 F.3d 848, 853 (6th Cir. 2012) (citing <u>United States v. Warshak</u>, 631 F.3d 266, 300 (6th Cir. 2010)), <u>petition for cert. filed</u>, No. 12-9585 (U.S. Mar. 29, 2013). To state a true <u>Brady</u> violation, he must demonstrate that (1) the evidence at issue was favorable to him, either because it was exculpatory or impeaching, (2) the State suppressed the evidence, either willfully or inadvertently, and (3) prejudice ensued. <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999).

<u>Brady</u> applies to situations involving "the discovery, after trial of information which had been known to the prosecution but unknown to the defense." <u>United States v. Agurs</u>, 427 U.S. 97, 103 (1976).

> "<u>Brady</u> obviously does not apply to information that is not wholly within the control of the prosecution. There is no <u>Brady</u> violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available . . . from another source, because in such cases there is really nothing for the government to disclose."

<u>Owens v. Guida</u>, 549 F.3d 399, 415 (6th Cir. 2008) (quoting <u>Coe v. Bell</u>, 161 F.3d 320, 344 (6th Cir. 1998)).

### 2. Application

-15-

The disputed evidence in this case was a bullet or casing that ejected from petitioner's gun during the alleged robberies.  Mr. Halatsis initially testified that the item was a full bullet, not just a shell, and that petitioner put the item in his pocket.  (Trial Tr. 9, 20, Oct. 25, 2005.)  Halatsis subsequently referred to the item as a shell.  (Id. at 20.)  Caryl Hobert testified that the item was a bullet (id. at 40), but Officer Frank Senter testified that he found a shell casing in petitioner's front  pocket (id. at 56).  To further complicate matters, defense counsel repeatedly referred to the item as a casing (id. at 20-23), but the prosecutor used the word "bullet" several times during closing arguments (id. at 82, 84).

The disputed item was not admitted in evidence, and petitioner maintains that, if it had been disclosed, he could have proved that it was an empty casing, not a live round.  He claims that this evidence would have aided him and undermined the complainants' testimony.

Although the trial court stated in its findings of fact and conclusions of law that it would have been helpful to have the item at trial (id. at 89), the item was not suppressed.  It simply was not admitted in evidence.  And because Petitioner obviously was aware of the item and knew the essential facts permitting him to take advantage of any exculpatory information, he has not stated a true Brady claim.  The state court reasonably concluded that petitioner's reliance on Brady was misplaced.

## D.  Trial Counsel

Petitioner raises several issues regarding his trial attorney.  To prevail on his claims, petitioner must show that his attorney's "performance was deficient" and "that the deficient performance prejudiced the defense."  Strickland v. Washington, 466 U.S.

-16-

668, 687 (1984).  The "deficient performance" prong "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id.  "Judicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.  "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." Richter, 131 S. Ct. at 792 (quoting Strickland, 466 U.S. at 693).

### 1. The Casing

Petitioner contends that his trial attorney was ineffective for failing to (1) challenge the prosecution's suppression of a casing, (2) object to the prosecutor's characterization of the casing as a bullet, and (3) ask the prosecutor to produce the casing.  The trial court rejected this claim on the basis that the prosecutor did not suppress evidence and trial counsel's decision regarding which evidence to present was trial strategy.

As previously explained, the prosecutor did not suppress the shell casing.  She merely failed to introduce the item in evidence.  Defense counsel was not ineffective for failing to make a meritless argument that the prosecutor suppressed evidence.  See Hoffner v. Bradshaw, 622 F.3d 487, 509 (6th Cir. 2010), cert. denied, __ U.S. __, 131 S. Ct. 2117 (2011); United States v. Martin, 45 F. App'x 378, 381 (6th Cir. 2002).

-17-

Petitioner alleges next that defense counsel should have objected to the prosecutor's characterization of the casing as a bullet.  However, there was conflicting testimony at trial as to whether the disputed item was a casing or a bullet.  Petitioner, moreover, has not shown that the item actually was a casing or an attachment to a key chain, as opposed to a live bullet.  To his credit, defense counsel argued that the prosecutor's burden was to produce the item and to show that it was a real bullet.  (Trial Tr. 83-84, Oct. 25, 2005.)  It was not ineffective assistance to argue that the failure to produce the item created reasonable doubt.

Petitioner's final claim about defense counsel is that he should have moved to have the casing introduced in evidence.  Defense counsel could have made a strategic decision not to attempt to have the item admitted in evidence, because if the item were a bullet, petitioner's version of the facts would have appeared incredible.  The Court therefore concludes that petitioner was not prejudiced by his attorney's failure to move for production of the alleged casing.

### 2.  Telephone Records

Petitioner's only other claim about trial counsel is that counsel failed to subpoena the complainant's telephone records.  According to petitioner, the records would have supported his testimony that the complainant called him and they would have contradicted Mr. Halatsis' testimony that he did not know petitioner.

Petitioner did not raise the issue in the state court.  Consequently, there is no state court decision to which the Court must defer, and review is de novo.  Carter v. Timmerman-Cooper, 380 F. App'x 470, 472 n.1 (6th Cir. 2010).

-18-

Attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691. A trial attorney "renders ineffective assistance when he 'fails adequately to investigate, and to introduce into evidence, information that demonstrates his client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict.'" Jackson v. Bradshaw, 681 F.3d 753, 762 (6th Cir. 2012) (quoting Richey v. Bradshaw, 498 F.3d 344, 362 (6th Cir. 2007) (quoting Reynoso v. Giurbino, 462 F.3d 1099, 1112 (9th Cir. 2006)), cert. denied, __ U.S. __, 133 S. Ct. 983 (2013).

Petitioner merely speculates that Mr. Halatsis' telephone records would have revealed a telephone call from Halatsis to petitioner. And, because the record indicates that the complainants chased petitioner after interacting with him and reported an armed robbery to the police, it is not plausible that they previously called petitioner to arrange for payment of a drug deal, as petitioner testified at trial. Thus, there is not a reasonable probability that the records would have revealed a call from Halatsis to petitioner or that the result of the trial would have been different if counsel had subpoenaed the telephone records. The Supreme Court "has never required defense counsel to pursue every claim or defense, regardless of its merit, viability, or realistic chance for success." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009).

In conclusion, petitioner has failed to show that his trial attorney's performance was deficient and that the deficient performance prejudiced the defense. As a result, he has not proved that his attorney was constitutionally ineffective.

**E.    Appellate Counsel**

-19-

The sixth and final claim alleges that appellate counsel was ineffective for failing to assert petitioner's first four habeas claims on direct appeal. These claims allege that the trial court interjected special knowledge of how drug dealers operate, that the prosecutor suppressed exculpatory evidence, and that trial counsel was ineffective. Petitioner contends that the failure to raise these issues on appeal was unreasonable and that there was no excuse for appellate counsel's omissions.

The trial court found no merit in this claim because, in its opinion, the appellate attorney's decision to winnow out weaker arguments and to focus on arguments more likely to prevail did not constitute ineffective assistance. The trial court also stated that petitioner could not show any prejudice as a result of appellate counsel's decisions.

While an appellate attorney's failure "to raise an issue on appeal can amount to constitutionally ineffective assistance," Jalowiec v. Bradshaw, 657 F.3d 293, 321 (6th Cir. 2011), cert. denied, __ U.S. __, 133 S. Ct. 107 (2012), an attorney is not required to raise every non-frivolous claim on appeal. Jones v. Barnes, 463 U.S. 745, 751 (1983). To demonstrate that appellate counsel was ineffective, Petitioner must show (1) that his attorney unreasonably failed to discover and raise nonfrivolous issues on appeal and (2) a reasonable probability that he would have prevailed on appeal but for his appellate attorney's failure to raise the issues. Smith v. Robbins, 528 U.S. 259, 285 (2000) (citing Strickland, 466 U.S. at 687-91, 694).

Although petitioner contends that appellate counsel raised a frivolous sufficiency-of-the-evidence issue on appeal, petitioner has raised the same issue here, and the issue is based on petitioner's claim-of-right defense at trial. Furthermore, this Court has determined that petitioner's other claims (abuse of discretion, suppression of evidence,

-20-

and ineffective assistance of trial counsel) lack merit.  The Court's inquiry, therefore, is

at an end.  "Appellate counsel cannot be found to be ineffective for 'failure to raise an

issue that lacks merit.'"  Shaneburger v. Jones, 615 F.3d 448, 452 (6th Cir. 2010)

(quoting Greer v. Mitchell, 264 F.3d 663, 676 (6th Cir. 2001)).

## IV.  CONCLUSION

The state court decisions in this case were not contrary to clearly established

federal law as determined by the Supreme Court, unreasonable applications of clearly

established federal law, or unreasonable determinations of the facts.  Accordingly, the

petition for a writ of habeas corpus (Doc. #1, filed Sept. 3, 2010) is **DENIED**.

## V.  CERTIFICATE OF APPEALABILITY

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no

automatic right to appeal a district court's denial or dismissal of the petition.  Instead,

[the] petitioner must first seek and obtain a [certificate of appealability.]"  Miller-El v.

Cockrell, 537 U.S. 322, 327 (2003).

A court may issue a certificate of appealability "only if the applicant has made a

substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

"A petitioner satisfies this standard by demonstrating that jurists of reason could

disagree with the district court's resolution of his constitutional claims or that jurists

could conclude the issues presented are adequate to deserve encouragement to

proceed further."  Miller-El, 537 U.S. at 327 (citing Slack v. McDaniel, 529 U.S. 473, 484

(2000)).

Reasonable jurists could not debate whether petitioner's claims should have

been resolved differently or whether the claims deserve encouragement to proceed

further.  Accordingly, the Court **DECLINES** to issue  a certificate of appealability.

Petitioner nevertheless may proceed in forma pauperis on appeal if he chooses to

appeal the Court's decision because he was granted leave to proceed in forma pauperis

in this Court, and an appeal could be taken in good faith.  Fed. R. App. P. 24(a)(3)(A).

Dated:  May 6, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
May 6, 2013, by electronic and/or ordinary mail and also on
Anthony Randall #533393, Alger Maximum Correctional
Facility, Industrial Park Drive, P.O. Box 600, Munising, MI
49862.

s/Barbara Radke
Deputy Clerk